IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN K. ZUCAL, et al., : <br>         Plaintiffs, : <br> : <br> v. : <br> : <br> COUNTY OF LEHIGH, et al., : <br>         Defendants. : | Civil No. 5:21-cv-04598-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                                   **December 27, 2024**

## I.   OVERVIEW

Plaintiffs, former dispatchers and supervisors at the Lehigh County 911 Call Center, claim they were terminated from their employment in retaliation for concerns they expressed over racial and sexual discrimination, waste, and other instances of misconduct by their coworkers. Alongside their claims of First Amendment retaliation, Plaintiffs bring claims for Fourteenth Amendment due process, hostile work environment, conspiracy, supervisory liability, and intentional infliction of emotional distress. Plaintiffs further allege Defendants used Plaintiffs' on-duty consumption of alcohol as a pretext for their termination. Despite repeated opportunities to amend their complaints and provide the Court with sufficient evidence to support their prima facie case, and the benefit of inferences being drawn in their favor at the summary judgment stage, Plaintiffs have failed to demonstrate a genuine dispute of material fact as to any of their claims. Defendants' Motion for Summary Judgment is granted, and all of Plaintiffs' claims are dismissed.

## II.     BACKGROUND[1]

Prior to the incidents giving rise to the current lawsuit, Plaintiffs Justin Zucal, David Gatens ("D. Gatens"), Francis Gatens ("F. Gatens"), John Kirchner, Emily Geiger, Julie Landis, and Brandi Palmer were employed by the County of Lehigh's 911 Call Center as dispatchers and supervisors. Statement of Undisp. Material Facts ("ECF No. 66"), at ¶ 1. On December 31, 2019, Plaintiffs engaged in a ceremonial New Year's Eve toast prepared by another supervisor of "Coquito" a mixed drink which "allegedly contained a negligible amount of alcohol" served in a "mouthwash size cup." Second Am. Compl. ("ECF No. 37"), at ¶¶ 132, 134. Plaintiffs allege that the supervisor who initiated this event, Ms. Alvarez-Carril, received permission to conduct the toast from the Director of Emergency Services. *Id*. at ¶ 137. Nonetheless, on January 22, 2020, Plaintiffs Zucal, F. Gatens, Geiger, Landis, and Palmer were given the option to resign or be terminated from their dispatcher positions for their involvement in the New Year's Eve toast. *Id*. at ¶¶ 143-45, 158. Supervisors D. Gatens and Kirchner were terminated from their positions around the same time. *Id*. at ¶¶ 154, 156. Plaintiffs insist their forced resignations and terminations were pretextual "and intended to hide the County's retaliation" against them for their complaints about "the County's mismanagement and incompetence in its running of the merged 911 Call Center, its racial and sexual discrimination and harassment of minorities and protected Constitutional classes, and the resultant potential harm to the community." Pls.' Statement of Disp. Facts ("ECF No. 72-3"), at ¶ 97.

On October 20, 2021, Plaintiffs filed suit in this Court against the County of Lehigh, Lehigh County Executive Philip Armstrong, Lehigh County Administrator Edward Hozza, Jr., Lehigh

---

[1] The facts in this case are well known at this stage. For a full recitation, refer to the Court's prior opinions in *Zucal v. County of Lehigh*, 660 F. Supp. 3d 334 (E.D. Pa. 2023) and *Zucal v. County of Lehigh*, 2023 WL 3997963 (E.D. Pa. June 14, 2023). ECF Nos. 33, 48.

County Director of Human Resources Marc Redding, Lehigh County Director of General Services Richard Molchany, former Lehigh County Director of Emergency Services John Kalynych (since deceased), former Lehigh County Director of the 911 Center Laurie Bailey, and Lehigh County Emergency Services Communications/911 Center Supervisor Christine Gieringer. Compl., ECF No. 1, at ¶¶ 11-18. They raised claims of First Amendment retaliation, Fourteenth Amendment due process, *Monell* liability, conspiracy, and supervisory liability. *Id*. Plaintiffs were then granted leave to file an Amended Complaint, which they did on April 17, 2022. Am. Compl., ECF No. 15. This Court granted Defendants' first Motion to Dismiss on March 8, 2023, and granted Plaintiffs leave to file another Amended Complaint. *See* ECF Nos. 33, 37. Then, on June 14, 2023, this Court granted Defendants' second Motion to Dismiss in part, dismissing Plaintiffs' Fourteenth Amendment due process claims against all Defendants but Armstrong and Molchany, Plaintiff Palmer's hostile work environment claim against all Defendants but Gieringer and Bailey, and Plaintiffs' *Monell* liability claim. ECF No. 48.

Presently before the Court is Defendants' Motion for Summary Judgment. *See* Mot. for Summ. J, ECF No. 65, *amended as* ECF No. 67. On October 30, 2024, the Court directed Plaintiffs to file supplemental briefing identifying "each expression of speech which they allege was subject to retaliation" including citations to the record of "when each expression was made, to whom it was made, and by whom it was made" and "how and when each expression of speech was conveyed to Defendants." ECF No. 94.

### III. LEGAL STANDARD

"Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must

3

analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023).

To survive a properly supported motion for summary judgment, the nonmoving party, Plaintiffs in this case, must present affirmative evidence of specific facts to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S at 256-57; *Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir.2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Id.*; FED. R. Civ. P. 56(c)(1)(A) (requiring any party asserting a fact to "cit[e] to particular parts of materials in the record . . ."). Statements of Disputed Facts are not evidence, and a "district court may not rely solely on [them]" to justify a finding that a dispute of material fact exists. *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) (internal citation omitted).

IV. ANALYSIS

    a. **First Amendment Retaliation**

Plaintiffs allege Defendants retaliated against their expression of First Amendment rights by terminating their employment, thereby damaging their reputations, and stigmatizing any future employment opportunities. ECF No. 37, at ¶¶ 193-94. They claim they exercised protected speech by reporting matters of public concern, wrongdoing, and waste by Defendants through the 911 Communication Center's internal database, in conversations to third parties and members of the public, and in conversations to their supervisory personnel at the 911 Call Center. *Id*. at ¶ 38. Drawing all inferences in Plaintiffs' favor, the Court will review the alleged instances of speech made by Plaintiffs Zucal, D. Gatens, F, Gatens, Kirchner, Geiger, Landis, and Palmer.

Plaintiff Zucal claims that during his employment at the 911 Call Center, he utilized a messaging system accessible to emergency services personnel in the County to raise complaints about deficiencies in the Call Center with seven Allentown police officers. ECF No. 66, at ¶ 55; Justin Zucal Dep. Tr. 214:1-218:15, ECF No. 66-3. Zucal also allegedly raised similar concerns with his father, City Councilman Ed Zucal, prior to the publication of a Morning Call article on January 12, 2020 addressing delays in response times following the merger of the Allentown and Lehigh County 911 Emergency Call Centers. Zucal Dep. Tr. 222:12-13, ECF No. 98-7. Although Zucal admits he did not personally provide background information to the authors of the article, he testified that it is "quite a possibility that some of the stuff [he complained of] got back to [the Morning Call]" through another city councilman quoted in the article whom he believes his father could have shared Zucal's complaints with. *Id*. 221:7-222:15; ECF No. 72-3, at ¶ 49.

Plaintiff F. Gatens raised general complaints about waste and misconduct in the 911 Call Center to various Slatington police officers named in his deposition. F. Gatens Dep. Tr. 171:23-

5

76:25, ECF No 66-1. Plaintiff F. Gatens was also "openly critical" of remarks made by Defendant Molchany featured in a Morning call newspaper article published on January 12, 2020. ECF No. 72-3, at ¶ 48.

Plaintiff Landis reported racial and sexual discrimination, harassment, a hostile work environment, waste, and other misconduct at the 911 Call Center up the informational pipeline of her supervisors with the expectation that they would document her reports in the Call Center's internal "Guardian Tracking" software and database. ECF No. 72-3, at ¶ 32; *See e.g.,* Julie Landis Dep. Tr. 29:18-30:7, 34:19-46:17, 53:11-61:23, ECF No. 98-3.

Plaintiff Palmer expressed concerns over operation of the new computer-aided radio dispatch system, technical difficulties with the phone system and headset connectivity, and inadequate training following the merger of the Allentown and Lehigh County Call Centers to her supervisors, police officers in North Catasauqua and Walnutport, a Slatedale firefighter and his wife, and a friend of a fellow 911 Call Center employee.  ECF No. 72-3, at ¶ 45; Brandi Palmer Dep. Tr. 84:23-86:4, 87:10-14, 88:9- 93:2, ECF No. 66-2.

Plaintiffs' Statement of Disputed Material Facts alleges that Geiger similarly "exercised her First Amendment citizen speech about matters of public concern involving the 911 Call Center" to several named officers. ECF No. 72-3, at ¶ 44.  However, Plaintiffs have failed to cite to evidence in the record outside of their pleadings to support this assertion, as required by Federal Rule of Civil Procedure 56(c)(1)(A). Since specific evidence that shows Plaintiff Geiger engaged in protected speech has not been presented, and it is not the Court's responsibility to "comb the record in search of disputed facts," Plaintiff Geiger's retaliation claim is dismissed on these grounds. *N.J. Carpenters Pension Fund v. Hous. Auth. & Urban Redevelopment Agency*, 68 F.Supp.3d 545, 549 (D.N.J. 2014).

Plaintiffs D. Gatens and Kirchner, in their supervisory roles, claim they spoke up at County Town Hall meetings in August and December of 2019 about sexual discrimination, misconduct, waste, and racial discrimination at the 911 Call Center by Caucasian dispatchers and supervisors. ECF No. 72-3, at ¶ 47; David Gatens Aff. ("ECF No. 72-4"), at ¶¶ 52, 55-56. In attendance at these County Town Hall meetings were police, fire, and EMS personnel. ECF No. 95, at 2 n.2. Plaintiff D. Gatens also voiced concerns through the Guardian Tracking System of a dispatcher sleeping on the job, and verbally to the Operations Manager/Quality Assurance Officer of an accident wherein a dispatcher prematurely hung up on a minority 911 emergency caller. ECF No. 72-3, at ¶ 29; ECF No. 72-4, at 46 ECF No. 95, at 3.

"In order to state a claim under 42 U.S.C. § 1983 of retaliation for exercising one's First Amendment rights, 'a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action.'" *Jerri v. Harran*, 625 F. App'x. 574, 578 (3d Cir. 2015). A public employee's speech is protected where (1) the employee was speaking as a citizen and not an employee, (2) the speech involved a matter of public concern, and (3) the government lacked an "adequate justification for treating the employee differently than the general public based on its needs as an employer." *Dougherty v. School Dist. Of Philadelphia*, 772 F.3d 979, 987 (3d Cir. 2014). If a Court is satisfied that (1) a public employee's speech was protected under the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, "the burden [shifts] to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." *Id*. at 986.

Plaintiffs' retaliation claims fail because they have not demonstrated that their speech was a substantial and motivating factor for the decision-making Defendants' alleged retaliatory action.[2]

---

[2] A robust analysis of whether Plaintiffs' alleged speech is protected under the First Amendment is unnecessary, as Plaintiffs have not satisfied the second requirement of their retaliation claim by showing that their speech was a substantial and motivating factor in Defendants' decision to terminate their employment. It is worth noting, however, that even Plaintiffs' strongest allegations of speech which were communicated to individuals outside the chain of command at the 2019 Town Hall meetings, via the computer-aided dispatch ("CAD") messaging system, or in personal conversations, do not warrant First Amendment protection because they were made in Plaintiffs' capacities as public employees, not as citizens. The determination of whether an employee was speaking as a citizen or an employee hinges on the critical question of "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014); *Dougherty*, 772 F.3d at 990. Courts are instructed to define the scope of an employee's duties by analyzing:

> [A]mong other things: (1) whether the speech of the employee relates to "special knowledge or experience acquired through the job," *see Gorum*, 561 F.3d at 185 (citing *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007)) abrogated on other grounds by *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 [131 S.Ct. 2488, 180 L.Ed.2d 408] (2011); (2) whether the employee raises complaints or concerns about issues relating to their job duties up the chain of command at their workplace, *Foraker*, 501 F.3d at 241; (3) whether the speech falls within the employee's designated responsibilities, *Gorum*, 561 F.3d at 186; and (4) whether the employee's speech is in furtherance of his designated duties, even if the speech at issue is not part of them. *See Foraker*, 501 F.3d at 243.

*Kimmett v. Corbett*, 554 F. Appx. 106, 111 (3d Cir. 2014).

Plaintiffs' speech about instances of sexual harassment, racial discrimination, waste, and wrongdoing at the 911 Call Center were related to their special knowledge as dispatchers and supervisors. The Town Hall meetings were attended by those "with a vital interest in protecting the interest of the citizens of the City of Allentown and County of Lehigh," which included police, fire, and EMS. ECF No. 72-3, at ¶ 71. Similarly, the CAD system permitted communication between 911 Call Center employees and police, fire, and EMS personnel whom they collaborated with to provide emergency services to citizens of Lehigh County. *See* Christine Gieringer Dep. Tr. 106:6-23, ECF No. 73-1. These meetings and messaging systems were not accessible to the public, and Plaintiffs as citizens would not have been privy to the information shared through them had it not been for their job as public employees. Plaintiffs' concerns about how the 911 Call Center was being run and how dispatchers were behaving, even if raised in a setting that could be heard by other emergency services personnel, was in furtherance of their duties as dispatchers and supervisors. Plaintiffs intended for these complaints to reach the ears of managerial personnel who would in turn report them to Human Resources to investigate and "take appropriate steps to discipline, employees committing acts of racial discrimination, sexual harassment, general harassment, and insubordination." ECF No. 72-3, at ¶ 71. Therefore, the Court finds Plaintiffs

8

"[F]or protected conduct [or speech] to be a … factor in a decision, the decisionmakers must be aware of the protected conduct." *Eskridge v. Phila. Hous. Auth.*, 722 Fed. Appx. 296, 299 (3d Cir. 2018) (quoting *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002)). Said otherwise, a plaintiff cannot prove retaliation for protected speech without evidence indicating the defendant knew the speech took place. Here, despite the Court's urging, Plaintiffs have failed to offer evidence sufficient to support such awareness on part of Defendants.

Where there is insufficient evidence to show Defendants heard or even knew about these allegedly protected statements, a reasonable juror could not conclude that Plaintiffs' speech was a substantial and motivating factor for their termination. Defendants have provided unrebutted evidence that individual Defendants at the 911 Call Center, including Defendants Armstrong, Molchany, Redding, Bailey, and Phillips either were absent at the Town Hall meetings or lacked knowledge of Plaintiffs' alleged complaints raised at the Town Hall meetings. *See* Lauren Bailey Dep. Tr: 233:7-234:10, ECF No. 66-1; Richard Molchany Dep. Tr. 147:13-18, 150:7-25, ECF No. 66-1; John Kirchner Dep. Tr. 317:11-14, ECF No. 66-1; Christine Gieringer Dep. Tr. 39:22-41:4, ECF No. 66-3; Phillips Armstrong Dep. Tr. 104:16-105:3, 106:4-11, 107:22-108:16, ECF No. 73-1; Emily Geiger Dep. Tr. 145:7-19, ECF No. 66-2. Plaintiffs have failed to respond with conflicting evidence in the record that generates a dispute over the decision-making Defendants' knowledge of their alleged protected speech. Plaintiffs only point to evidence in the record to support a plausible inference that Defendant Gieringer had knowledge of the allegedly protected statements raised at the Town Hall meetings. Christine Gieringer Dep. Tr.39:19-41:6, ECF No. 66-3. However, Plaintiffs admit that the Defendants involved in the decision to terminate their

---

made these statements in their capacities as public employees, not citizens, and they are not protected under the First Amendment.

employment or force their resignation, the decisionmakers, were Armstrong, Hozza, Jr., Molchany, and Redding, whom Gieringer never informed of the allegedly protected statements from the Town Hall. ECF No. 72-3, at ¶ 103; Christine Gieringer Dep. Tr. 41:7-18, ECF No. 66-3.

The Court finds there is no genuine dispute over whether Plaintiffs' speech was a substantial and motivating factor in their terminations.

> [W]here, as in this case, a party fails to respond to the movant's statement of undisputed material facts . . . with a citation to the factual record where contrary evidence exists, and where no contrary fact is readily apparent in the opponent's evidence, then the Court assumes that the opponent has no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion.

*New Jersey Carpenters Pension Fund v. Hous. Auth. & Urb. Dev. Agency of the City of Atl. City*, 68 F. Supp. 3d 545, 549 (D.N.J. 2014). Plaintiffs, despite repeated requests from the Court, have failed to respond with citations to the record of contradictory facts to establish the decision-making Defendants' knowledge of their allegedly protected speech. As there is no genuine dispute of material fact as to a required element of Plaintiffs' retaliation claims, summary judgment is granted.

### b. Fourteenth Amendment Procedural Due Process

Plaintiffs next raise a 14th Amendment due process claim against Defendants Molchany and Armstrong for "creat[ing] a false image to the public of the Plaintiffs partying and drunk on the job" as part of a group of individuals who were either terminated or forced to resign for their participation in a New Year's Eve toast.[3] Pls.' Opp. to Mot. for Summ. J. ("ECF No. 72-1"), at 16; ECF No. 72-3, at ¶ 135. Defendants Armstrong and Molchany were quoted in a WFMZ news

---

[3] This Court previously dismissed Plaintiffs' due process claim as to all other Defendants. *See Zucal v. Cnty. of Lehigh*, No. 5:21-CV-04598, 2023 WL 3997963, at *8 (E.D. Pa. June 14, 2023). The Court also rejected Plaintiffs' argument that they had a property interest in their positions as 911 Dispatchers. *Id.* at *7.

article titled "10 Lehigh County 911 Workers Lose Jobs After Alleged New Year's Eve Drinking Incident." ECF No. 37, at ¶ 216. Although the article did not name any specific individuals who participated in the toast, Plaintiffs claim individuals who regularly dealt with the 911 Call Center could identify some of them based on the descriptions provided. *See* ECF No. 72-3, at ¶ 135 (alleging that Plaintiff Kirchner was the only former County supervisor terminated with 35 years' experience). Defendant Molchany is quoted in the article as saying "we believe there was a violation of a long-standing County policy. Due to that violation, we needed to take swift action, . . ." ECF No. 37, at ¶ 217(f). Mr. Armstrong described the decision to terminate Plaintiffs as "a black and white issue . . . not gray," because "[i]f something like that would happen later, and [Defendant County] said well this time we only did a suspension, well then [Defendant County] didn't really say this is not allowed and this is not policy." *Id.* at ¶ 217(g).

1. **Stigma-Plus**

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (internal quotations omitted).

As to the first requirement of procedural due process, Plaintiffs claim Defendants' statements "stigmatized each Plaintiff's 14th Amendment 'liberty' interest in his or her good name and reputation, and caused each Plaintiff to be denied future employment as a 911 dispatcher [or] supervisor due to the false impression . . . that the Plaintiffs drink on the job and are irresponsible." ECF No. 72-1, at 16-17. This type of stigma-plus due process claim requires proof of a stigma to Plaintiffs' reputations in addition to the deprivation of an additional right or interest. *Hill,* 455 F.3d

at 236. "In the public employment context . . . [t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination [of employment] is the 'plus.' When such a deprivation occurs, the employee is entitled to a name-clearing hearing." *Id*.

Plaintiffs' due process claims do not survive summary judgment because they fail the first element, stigma. The stigma element is satisfied where a defendant has made a public and false statement about the plaintiff. *Id*. Because the statements by Defendants Molchany and Armstrong were directly quoted in a news article, they satisfy the publication prong of the stigma test. Plaintiffs argue Defendants' statements that they allegedly violated "a longstanding County policy" and their disciplinary response was a "black and white issue" are false in nature because Defendant County did not terminate Molchany or Kalynych for possessing and consuming alcohol on County property, or another dispatcher for distributing it, even though these behaviors all violated the same policy as Plaintiffs' New Year's Eve toast. ECF No. 72-3, at ¶¶ 135-36; *see id*. at ¶ 2. Plaintiffs further allege the statement made by Defendants that Lehigh County 911 Call Center employees were "drinking on the job" is false because not all Plaintiffs knew they were consuming alcohol prior to the toast, and defamatory because it creates the inference that they were "heavily intoxicated" and mischaracterizes their participation in a ceremonial toast as conduct that endangered public safety. *Id*. at ¶¶ 141,143, 147; Julie Landis Dep. Tr. 136:14-24, ECF No. 66-1. Defendants, in turn, argue Plaintiffs cannot establish falsity through a "merely unreasonable reading or inference contained in a publication." ECF No. 67, at 13-14; *see Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361 (3d Cir. 2021).

Because Plaintiffs have failed to provide contrary evidence to refute the underlying truth of the quoted statements by Defendants Molchany and Armstrong, their claims fail the stigma test. *See Dondero*, 5 F.4th at 360-61 (finding a plaintiff failed to establish the stigma prong of his due

12

process analysis where he "offer[ed] no evidence suggesting the poor marks he received [on his performance review] were false or that the Township made them publicly"); *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (finding that the classification as a sex offender is not false where the plaintiff "has not alleged that the conduct underlying his conviction for assault . . . did not occur"). Plaintiffs do not contest the underlying truth of whether they violated a County policy by consuming alcohol while at work. *See* ECF No. 66, at ¶ 3. Rather, they attempt to argue that the characterizations of the County policy as "longstanding" and the decision to terminate them as "black and white" are false statements because there have been other instances of violation of this policy where immediate termination did not result. ECF No. 72-1, at 15. However, Plaintiffs admit to participating in a New Year's Eve toast that contained alcohol, which violates an enumerated disciplinary offense in the County's Personnel Policies and Procedures Manual. ECF No. 72-3, at ¶¶ 2, 138. Therefore, the truth of the conduct underlying Defendants' proffered reasons for terminating them is undisputed.

As a secondary matter, the statements in the WFMZ article made by Defendants Molchany and Armstrong appear to be nothing more than mere statements of opinion or perception of the New Year's Eve toast from a managerial perspective. The Court is doubtful whether these statements are capable of being proven false given their subjective nature. *See Paterno v. City of New York*, 2018 WL 3632526, at *5 (S.D.N.Y. July 31, 2018) (finding that statements referencing "a terrible chapter" and "fundamental principles" were not actionable to make out a stigma-plus claim under the Fourteenth Amendment). Because Plaintiffs cannot show that Defendants' statements were false, they cannot satisfy the "stigma" portion of their stigma-plus claim. Accordingly, Plaintiffs' due process claims are dismissed.

### c. Hostile Work Environment

Plaintiff Palmer alleges she suffered "intentional, invidious sexual and gender-based discrimination . . . that was both physically offensive and humiliating" in violation of Title VII. ECF No. 37, at ¶ 235. Palmer filed a charge with the EEOC sometime on or after November 13, 2020, in which she alleged, among other things, that she was criticized by male coworkers for taking breaks to tend to her newborn child, sexually harassed and inappropriately touched by a male coworker, and afforded less fair treatment than her male counterparts by a male supervisor. *See* ECF No. 66, at ¶ 159; ECF No. 66-4, Appx 393-94. Palmer claimed these behaviors began almost immediately after she started working at the 911 Call Center in 2012, and lasted until 2019, although she stopped "regularly complaining to her supervisors about the sexual harassment" at some point in 2017. ECF No. 37, at ¶ 74; ECF No.72-3, at ¶¶ 154-56; Brandi Palmer Dep. Tr. 51:4-52:19, ECF No. 73-1.

Defendants argue Palmer's claims are time-barred because she failed to exhaust her administrative remedies by filing a complaint with the EEOC within 300 days of the alleged unlawful employment practice. ECF No. 67, at 17; *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). Assuming the alleged sexual misconduct occurred up until the very last day of 2019, Defendants argue that Plaintiff had until October 26, 2020 to file her EEOC charge. ECF No. 67, at 16.

"To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Mandel,* 706 F.3d at 165 (citing 42 U.S.C. § 2000e–5(e)(1)). The continuing violation doctrine allows a plaintiff to aggregate individual discriminatory acts to make out a hostile work

environment claim so long as "at least one at falls within the applicable limitations period." *Id.* at 165-66. However, as Defendants correctly acknowledge, acts of "termination, failure to promote, denial of transfer, or refusal to hire" cannot be aggregated because they are considered "separate actionable unlawful employment practice[s]." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002); *Mandel*, 706 F.3d at 165. Plaintiff Palmer, therefore, cannot aggregate her resignation and Defendant County's refusal to rehire her with her hostile work environment claim under a continuing violation theory, which makes her EEOC charge untimely.

In the alternative, Palmer argues that the doctrine of equitable tolling is applicable in this case to stop the running of the statute of limitations. She claims that she was delayed in filing her hostile work environment claim because she relied on Defendants' misrepresentation that they would rehire her if she resigned from her position. ECF No. 72-1, at 20 n. 2. "Equitable tolling is a 'rare, extraordinary remedy.'" *Hilton v. Home Depot, Inc.*, 2022 WL 837207, at *5 (E.D. Pa. March 21, 2022) (quoting *Aversano v. Santander Bank, N.A.*, 828 F. App'x 109, 112 (3d Cir. 2020)); *Santos ex rel. Beato v. United States.*, 559 F.3d 189, 203 (3d Cir. 2009); *Hedges v. United States,* 404 F.3d 744, 751 (3d Cir.2005). To prevail in her claim for equitable tolling, Palmer must show that Defendants "actively misled [her] during the limitations period, which prevented [her] from recognizing that she had a valid claim in time" and that her delay was not a result of "lack of reasonable due diligence in attempting to uncover the relevant facts." *Aversano,* 828 F. App'x, at 112; *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006). Palmer has failed to put forth evidence that explains how Defendants' alleged misrepresentations about rehiring her delayed her from putting forth her hostile work environment claim related to incidents of sexual misconduct which occurred months before her resignation. Palmer was aware that she might have had a valid claim for hostile work environment prior to her resignation, and has failed to provide

15

adequate justification for her delay that would make the doctrine of equitable tolling applicable. Her hostile work environment claim for sexual misconduct is dismissed as time barred.

### d. Civil Conspiracy

Plaintiffs next allege that Defendants Redding, Molchany, Bailey, and Gieringer conspired to "set [them] up" for future discharge or forced resignation in violation of their First and Fourteenth Amendment rights. ECF No. 37, at ¶¶ 194, 273. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights . . . includ[ing] of course, those protected by the Due Process Clause of the Fourteenth Amendment . . ." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018). In addition to showing that Plaintiffs were deprived of a federally protected right in furtherance of the alleged conspiracy, Plaintiffs "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Jutrowski, 904 F.3d at 295* (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009)). This can be accomplished through direct proof or circumstantial evidence through which a jury could infer a meeting of the minds had occurred. *Id*.

"There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or statutory right or privilege." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017). Plaintiffs have failed to demonstrate a violation of their rights under either the First or Fourteenth Amendments. Without the prerequisite of a constitutional violation, the Court does not need to reach an analysis of whether there was a meeting of the minds. Plaintiffs' claims of civil conspiracy are dismissed.

### e. Supervisory Liability

Plaintiffs' claims of supervisory liability under § 1983 attempt to hold individual Defendants Armstrong and Hozza, Jr. personally liable for "participat[ing] in violating the plaintiff's rights, direct[ing] others to violate them, or, as the person in charge, ha[ving] knowledge of and acquiesce[ing] in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med.*, Inc., 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (citation omitted); *Christmann v. Link*, 532 F.Supp.3d 263, 269-70 (E.D. Pa. 2021). As with their claims of civil conspiracy, Plaintiffs' claims of supervisory liability fail because they have not established an underlying constitutional violation, which is a necessary element of their supervisory liability claims. *Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### f. Intentional Infliction of Emotional Distress

Last, Plaintiffs raise a supplemental state law claim against Defendants for intentional infliction of emotional distress. Plaintiffs allege "[t]he conduct of Defendants . . . in retaliating against Plaintiffs and in depriving Plaintiffs of their protected First and Fourteenth Amendment rights was extreme and outrageous and intended to inflict emotional distress, psychological trauma, [and] psychic[al] pain and suffering upon Plaintiff[s]." ECF No. 37, at ¶ 332. Plaintiffs further allege Defendants acted intentionally to instill fear in them, and in doing so, they caused Plaintiffs to suffer indefinite and extreme emotional and physical harm. *Id*. at ¶ 333.

For a plaintiff to succeed on a claim of intentional infliction of emotional distress under Pennsylvania state law, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 315 (E.D. Pa. 2021) (quoting *Hoy v. Angelone,* 691 A.2d 476, 482 (Pa. Super. Ct. 1997), *aff'd* 720 A.2d 745 (1998)). "In addition, 'a

17

plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.'" *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)); *Greiser v. Drinkard*, 516 F. Supp. 3d 430, 439 (E.D. Pa. 2021).

Pennsylvania maintains a high bar for what constitutes extreme and outrageous conduct, often requiring a showing of "continuing malicious actions" in cases of workplace harassment. *Smith*, 515 F. Supp. 3d, at 316-17; *see Townsend v. City of Chester*, 2020 WL 4347368, at *11-12 (E.D. Pa. July 29, 2020). Extreme and outrageous conduct is that which goes "beyond all possible bounds of decency" and would be considered "atrocious, and utterly intolerable in a civilized society." *Reedy*, 615 F.3d, at 231-32 (quoting *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. Ct.). At the outset, this Court has the responsibility of determining as a matter of law whether Defendants' conduct could be found extreme and outrageous by a reasonable jury. *See Smith*, 515 F. Supp. 3d at 319.

Plaintiffs have not alleged behavior by Defendants which would amount to extreme and outrageous conduct. Conclusory allegations of harassment and discrimination in the workplace that are not continuing and malicious are insufficient. Although Plaintiffs attempt to argue Defendants admitted "the behavior of certain 911 operators towards one or more of the Plaintiffs has been 'outrageous,'" Plaintiffs fail to support these accusations with accurate cites to the record. ECF No. 72-1, at 18. Plaintiffs have premised their claims of intentional infliction of emotional distress on the same conduct they allege violated their First and Fourteenth Amendment rights. Where Plaintiffs' First and Fourteenth Amendment claims have been unsuccessful, Plaintiffs' intentional infliction of emotional distress claims will also fail. *See Townsend*, 2020 WL 4347368, at *12. Lastly, Plaintiffs have failed to put forth evidence that proves Defendants acted with intent to inflict severe emotional distress, and they have failed to specify what the severe emotional

distress and physical harm was that they suffered. Plaintiffs' claims of intentional infliction of emotional distress are dismissed, as there is no genuine dispute of material fact.

## V.     CONCLUSION

The Court finds no reasonable fact finder could reach a judgment for the Plaintiffs, even drawing all inferences in their favor. As the non-moving party, Plaintiffs were required to put forth evidence to generate a genuine dispute of material fact, and they have not done so. Therefore, Defendants' Motion for Summary Judgment (ECF No. 65) is granted, and all claims are dismissed. An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge